E-FILED
Friday, 16 December, 2011 03:08:00 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

JOSEPH PETTIS,
          Plaintiff,

vs.                                            09-2194

JEROME COMBS DETENTION CENTER, et al.,
          Defendants.

## MEMORANDUM ORDER AND OPINION

Before the Court are Defendants' Partial Motion for Summary Judgment [52], Plaintiff's Response [56] and Defendants' Reply [57].

## Background

Plaintiff Joseph Pettis filed a pro se Amended Complaint pursuant to 42 U.S.C. §1983, seeking money damages for constitutional injuries that he allegedly incurred while detained at Jerome Combs Detention Center ("JCDC") against Defendants Chief Michael Downey, Asst. Chief Chad Kolitwenzew, Lt. Kent Smith, Cpl. Scott Brazill, Officer Matthew Meehan, Officer Emerson Rushing, Officer Antonio Emery, Sgt. Todd Schloendorf, Lt. John Timm, Cpl. Richard Ball, Officer Adam Graves, Officer Eric Senesac, Officer Jeremy Most, Officer John Juergens, Officer Joshua Berns, Officer Nicholas Riley, Officer Kyle Vance, Officer Tyson Nolan, Officer Adam Jackson, Officer Harry O'Neil, Officer Charles Hertz, Officer Miguel Ayala, Officer Lazarus Hughes, and Officer Robert Smith. Plaintiff was allowed to proceed on the following claims: (1) that he was subjected to unconstitutional strip searches, (2) that he was subjected to an excessive use of force and a failure to protect on June 23, 2009 against Cpl. Brazill and Ofcs. Meehan, Smith, Emery and Rushing, and (3) that he was denied visitation and stamps and envelopes, in violation of his First Amendment rights. This Court dismissed all other claims presented by Plaintiff in his Amended Complaint. All Defendants now move for summary judgment on all claims except the excessive use of force claim, that is brought against Defendants Scott Brazille, Matthew Meehan, Robert Smith, Antonio Emery and Emerson Rushing.

## Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine

1

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment." *Keri v. Barod of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Facts[1]

During the relevant time period, Plaintiff was detained at JCDC. (Downey Affidavit, ¶ 4, Ex. A and Plaintiff's Dep., p. 9, Ex. B). Defendants were employed by the Kankakee County Sheriff's Office and worked at JCDC. (Ex. A, Downey Affidavit, ¶ 5). In February 2009, Plaintiff Joseph Pettis was a pretrial detainee at the Cook County Jail. On February 9, 2009, following a gang riot at the Cook County Jail, Plaintiff was transferred to JCDC with records of a severe and violent behavioral history. (Ex. A, Downey Affidavit, ¶ 3) Chief Downey was aware of Plaintiff's severe behavioral history and thus housed him in administrative segregation for the safety of officers and other JCDC inmates. (Ex. A, Downey Affidavit, ¶ 6) While detained at the Cook County Department of Corrections, on January 8, 2007, and December 21,

---

[1]Facts are based upon the parties' Statements of Undisputed Facts and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record. Further, exhibits can be found attached to Defendants' Memorandum of Law [53], unless otherwise noted.

2008, Plaintiff was twice found guilty of having a sharpened metal object, or shank, in his cell and received a punishment of 25 days and 30 days in segregation. (Ex. B, Plaintiff's Dep., pp. 11-12, 19-20) While detained at the Cook County Department of Corrections, on February 13, 2007, Plaintiff was found guilty of refusing a correctional officer's orders to return to his cell and received a punishment of 7 days in segregation. (Ex. B, Plaintiff's Dep., p. 13) While detained at the Cook County Department of Corrections, on May 12, 2007, Plaintiff was found guilty of being involved in a fight in the yard and received 10 days in segregation. (Ex. B, Plaintiff's Dep., p. 15) While detained at the Cook County Department of Corrections, on December 29,
2007, Plaintiff was found guilty of being involved in a fight in the day room and was sentenced to 3 days in segregation. (Ex. B, Plaintiff's Dep., pp. 15-16) While detained at the Cook County Department of Corrections, on April 7, 2008, Plaintiff flooded his cell at the Cook County jail and received 4 days in segregation as punishment. (Ex. B, Plaintiff's Dep., p. 17) While detained at the Cook County Department of Corrections, on September 13, 2008, Plaintiff was in an unauthorized area of the Cook County jail, and he received 5 days in segregation as punishment. (Ex. B, Plaintiff's Dep., p. 18) While detained at the Cook County Department of Corrections, on October 26, 2008, Plaintiff was found guilty of being out of his cell when he was not supposed to be and received 9 days in segregation. (Ex. B, Plaintiff's Dep., p. 18-19) While detained at the Cook County Department of Corrections, on January 22, 2009, Plaintiff was found guilty of being involved in a fight with another inmate and received 14 days in segregation. (Ex. B, Plaintiff's Dep., p. 20) While detained at the Cook County Department of Corrections, on January 28, 2009, Plaintiff was found guilty of being involved in a gang riot and received 25 days in segregation. (Ex. B, Plaintiff's Dep., p. 21, 23) During the gang riot, Plaintiff was stabbed 9 or 10 times and was a member and leader of the Four Corner Hustler's gang. (Ex.B, Plaintiff's Dep., p. 21-23)

When Plaintiff arrived at JCDC, because of his violent and gang related activities and severe disciplinary and behavioral history at Cook County, Chief Downey ordered Plaintiff, along with two other detainees transferred at the same time for similar problems, to be strip searched twice a day. (Ex. A, Downey Affidavit, ¶ 7) For Plaintiff's strip searches, he was required to disrobe, run his fingers around his mouth and gums, lift up his genitalia, bend over and spread his buttocks, cough three times, lift up his feet, wiggle his toes and fingers and face the wall until he heard his cell door slam. (Ex. B, Plaintiff's Dep., p. 28) Plaintiff claims that during the strip searches, correctional officers pointed Tasers and made derogatory comments about him. JCDC correctional officers did not touch Plaintiff during the strip searches. (Ex. B, Plaintiff's Dep., p. 28) Only male JCDC correctional officers conducted Plaintiff's strip searches. (Ex. B, Plaintiff's Dep., p. 29) Defendants deny that they made derogatory remarks to Plaintiff during the strip searches. However, for summary judgment purposes only, Defendants accept as true that such statements were made to Plaintiff. His strip searches were performed out of view of other inmates. (Ex. B, Plaintiff's Dep., p. 29)

Plaintiff submitted a grievance on June 24, 2009, claiming that JCDC officers used excessive force against him during an incident in his cell on June 23, 2009. (Ex., A, Downey Affidavit, ¶ 9). On June 23, 2009, Cpl. Brazill and Ofcs. Meehan, Smith, Emory and Rushing

3

were involved in subduing Plaintiff in his cell. (Ex. B, Plaintiff's Dep., p. 37) Plaintiff claims the June 23 incident caused him to receive a bump on his head, Taser mark on his back, and a cut on his finger. (Ex. B, Plaintiff's Dep., p. 47-48) Plaintiff did not submit any other grievances, either before or after the June 24, 2009, grievance, relating to an excessive use of force or failure to protect. (Ex. A, Downey Affidavit, ¶ 8)

In order for an inmate to have visitors at JCDC, the inmate must fill out an "Inmate Visitation Form," which requires the inmate to list the name of each person who may come to visit. (Ex. A, Downey Affidavit, ¶ 10) This visitation form allows JCDC staff to review the list of potential visitors and ensure that there are no security risks involved in allowing these visits. It also ensures that the inmate wants to see persons claiming to be friends and family. (Ex. A, Downey Affidavit, ¶ 11) An inmate can obtain an Inmate Visitation Form by requesting one from a correctional officer or by requesting one through JCDC's grievance procedure. (Ex. A, Downey Affidavit, ¶ 12) Plaintiff submitted a grievance on April 23, 2009, asking about his access to visitation and mail. (Ex. A, Downey Affidavit, ¶ 13) The April 23, 2009, grievance was rejected by JCDC administration because it violated the JCDC grievance procedure, which requires a separate grievance for each complained of issue. (Ex. A, Downey Affidavit, ¶ 14) Plaintiff submitted another faulty grievance on June 27, 2009, which contained multiple requests that asked, in part, about his visitation rights. (Ex. A, Downey Affidavit, ¶ 15) Plaintiff received a visitation list sometime between June and August of 2009. (Ex. B, Plaintiff's Dep, pp. 50-51) Plaintiff did not submit his visitation list until September 20, 2009. (Ex. A, Downey Affidavit, ¶ 16) Plaintiff submitted a second visitation list, adding new potential visitors, on October 1, 2009. (Ex. A, Downey Affidavit ¶ 17) No visitors ever came to JCDC to visit Plaintiff. (Ex. A, Downey Affidavit, ¶ 18).

Plaintiff submitted a grievance on March 13, 2009, asking for permission to make purchases from the commissary so he could obtain stamps and envelopes, but this grievance was denied for officer safety. (Ex. A, Downey Affidavit, ¶ 19) JCDC regulations allow JCDC administration to deny commissary access to inmates in administrative segregation for "compelling reasons." (Ex. A, Downey Affidavit, ¶ 20) Chief Downey believed that, given Plaintiff's past history as an inmate, including his prior discipline for shank-making, he should be denied commissary access for the safety and security of JCDC officers and inmates. (Ex. A, Downey Affidavit, ¶ 21) Plaintiff received stamps and envelopes sometime between June and August of 2009. (Ex.B, Plaintiff's Dep, pp. 51-52)

Plaintiff did not suffer any physical injuries from his not receiving a visitation list or from his not having commissary access to purchase stamps and envelopes. (Ex. B, Plaintiff's Dep., p. 56; Plaintiff's Answers to Int., ¶ 6, attached hereto as Ex. C) Plaintiff has testified his damages are the result of "just stress, mental, and post traumatic stress." (Plaintiff's Response to Request for Documents, ¶ 5, as Ex. D)

Analysis

Strip Searches

Defendants are entitled to summary judgment on Plaintiff's claims of unconstitutional strip searches because the searches were limited in scope, done in a reasonable manner, and necessary for jail security and inmate safety. Correctional officers may consider the inmate's past behavior when deciding to conduct a search, *see, e.g*., Kraushaar v. Flanigan, 45 F. 3d 1040 (7th Cir. 1995) (holding that the arrestee's furtive movements at his pants during the arrest justified the strip search conducted at the jail during booking) the strip searches conducted of the plaintiff's person were constitutional. During his deposition, the plaintiff admitted that before being transferred to JCDC from the Cook County Department of Corrections, he twice received disciplinary reports for shanks found in his cell and mattress, and he had been disciplined numerous times for fighting with other inmates, failing to obey officers, being in a location in the jail that he was not authorized to be, and flooding his cell. Plaintiff also was involved in a gang riot on January 28, 2009, in the cell block, as a leader of his gang, the Four Corner Hustler's Gang. Plaintiff was stabbed 9-10 times during this melee at Cook County, just two weeks before being transferred to JCDC. Chief Downey was aware of Plaintiff's propensity for fighting and history of shank making since that was the reason he was removed from Cook County and transferred to JCDC. The defendants are correct in that Chief Downey and JCDC staff were not required to ignore the plaintiff's prior disciplinary reports and would have been foolish to do so. The plaintiff's past violent and gang related activities and severe disciplinary and behavioral history at Cook County provide legitimate security reasons for the frequent strip searches.

The undisputed facts demonstrate that there is no basis for the plaintiff's claim because he was subject to visual body searches which were done for legitimate security reasons and were performed in a reasonable manner. It appears that the plaintiff assumes that detainees have a right to privacy and that any visual body search is violative of his constitutional rights. On the contrary, the courts recognize that jails and prisons are places of confinement that necessarily result in a prisoner's loss of freedom of choice and privacy. Bell v. Wolfish, 441 U.S. 520, 537 (1979); Peckharn v. Wisconsin Department of Corrections, 141 F.3d 694, 696-697 (7th Cir. 1998); Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995). A jail has a legitimate interest in the maintenance of security and order, needing, for example, to assure that detainees do not obtain weapons or illegal drugs. Bell, 441 U.S. at 540, Johnson, 69 F.3d at 146. With this in mind, the Supreme Court has said that the courts ordinarily should defer to the expert judgment of jail administrators in matters involving institutional security. Id. , 441 U.S. at 540 n.23. Given such security concerns, it is reasonable and not unconstitutional for jail officials to conduct regular strip searches of detainees.

Strip searches of prisoners become unconstitutional only where they are maliciously motivated, unrelated to institutional security, and thus totally without penological justification. *See* Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2004). When such circumstances exist, a strip search becomes harassment unrelated to prison needs and is motivated by an intent to humiliate and inflict psychological pain. Whitman, 368 F.3d at 934; Fillmore v. Page, 358 F.3d

5

496, 505 (7" Cir. 2004). A prisoner claiming a constitutional violation has a "heavy burden" of proving (1) that a strip search was not rationally related to a legitimate security interest, and (2) that it was conducted in a harassing manner intended to humiliate and inflict psychological pain. Bell, 441 U.S. at 561-562; Whitman, 368 F.3d at 934; Calhoun, 319 F.3d at 939.

The plaintiff has not satisfied the first element of his burden of proof because the facts establish that there were legitimate, identifiable security reasons for defendants to conduct visual strip searches of him. The body searches clearly were done with penalogical justification. Society had delegated to Chief Downey and his officers the responsibility of holding the plaintiff and other prisoners in custody pending trial. That responsibility carried with it the fundamental need to ensure the safety of the jail staff, the plaintiff and other detainees. The plaintiff's violent history made continued vigilance absolutely necessary. Increased vigilance was essential in order to discover and deter any such activity.

Visual body cavity searches have been approved by the courts. Bell, 441 U.S. at 558-562 (visual body cavity searches of detainees after every contact visit were reasonable responses to legitimate security concerns about allowing concealed contraband into prison); Whitman, 368 F.3d at 934-935 (prison justified in doing strip search as part of random drug-testing); Peckham, 141 F.3d at 695, 697 (strip searches done pursuant to prison security policies were not punitive); Koner v. Snyder, 252 F. Supp. 2d 723, 725-726 (C.D. Ill. 2003) (prison had legitimate security reason to conduct strip search of all prisoners in housing unit where shanks were discovered); Geder v. Lane, 745 F.Supp. 538, 540 (C.D. Ill. 1990) (prison had legitimate reason to perform visual body cavity search of prisoner returning from court hearing).

The plaintiff is unable to satisfy his burden of proving that the body searches were excessive in their performance, amounting to calculated harassment unrelated to Jail needs and done with the intent to humiliate and inflict psychological pain. Whitman, 368 F.3d at 934. The protocol followed by the Jail is evidence that the defendants showed sufficient sensitivity to the plaintiff's personal dignity and acted in a manner designed to be neither harassing nor humiliating. The courts have consistently upheld prison body searches done in a similar manner. Bell, 441 U.S. at 558, 560-561 (approving as reasonable comparable visual body cavity searches); Whitman, 368 F.3d at 932-933, 935 (strip search conducted in bathroom stall by male officers was constitutional); Fillmore, 358 F.3d at 501, 505 (strip search conducted by male officers in vacant holding cell was not done in harassing or humiliating manner); Peckham, 141 F.3d at 695, 697 (repeated strip searches of female prisoner pursuant to institutional security policy were not done for reasons of harassment). Here, the plaintiff was not subjected to any more of an invasive search than what was necessary to locate potentially hidden contraband. The plaintiff was only visually inspected by male officers who did not physically touch the plaintiff while executing the searches, and other inmates could not view the searches Further, the manner and location of the plaintiff's strip searches were reasonable as well. He was searched in his own cell by male correctional officers.

Plaintiff also alleges that during the body searches, correctional officers pointed Tasers

6

and made derogatory comments about him. The tasor was never used on him. Under the circumstances, the practice of having a back-up officer ready with a tasor gun while body searches were being conducted of detainees with the plaintiff's violent history represents a legitimate judgment by jail officials regarding security needs and appropriate levels of deterrence. Verbal harassment and intimidation do not violate the Constitution and their occurrence does not turn otherwise permissible conduct into constitutional violations. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (correctional officer's racially derogatory and sexually explicit remarks did not give rise to constitutional claims); Daniels v. Southfort, 6 F.3d 482, 484 (7th Cir. 1993) (threatening verbal statements by police officers do not present constitutional concerns).; Duncan v. Baird, 2004 WL 2339334, N.D.Ill (verbal abuse and threats and threatening gestures by correctional officers do not rise to level of constitutional violations).

The Court finds the justification for the plaintiff's searches was rationally related to legitimate penological concerns, i.e., jail security and inmate and officer safety. The plaintiff's past history in Cook County of violent confrontations, including fighting, gang-related violence, and shankmaking, necessitated the searches. Thus, summary judgment is granted in favor of all the defendants on this claim.

Deliberate Indifference to Plaintiff's Safety

The plaintiff alleges that "[t]he administration" was aware of misconduct of the staff and failed to protect Plaintiff from unconstitutional treatment. Presumably, the plaintiff is alleging a failure to protect stemming from his allegations of an excessive use of force on June 23, 2009. The plaintiff's failure to protect allegations are governed by the Fourteenth Amendment's Due Process Clause but analyzed under Eighth Amendment tests. Woods v. Morris, No. 04-1440, 2007 WL 2792154, at *17 (C.D. Ill. Sept. 18, 2007) (*citing* Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002)); *see also* Henderson v. Sheahan, 196 F.3d 839, 844 n.2 (7th Cir. 1999). "A prison official violates a prisoner's Eighth Amendment right to be protected from an attack–either by other inmates or by guards–only when the prisoner is incarcerated under conditions posing an objectively serious risk of harm to him and when the prison official acts with deliberate indifference to that serious risk of harm." Wilkins v. Ill. Dep't of Corr., No. 08-CV-723-JPG, 2009 WL 1904414, at *4 (S.D. Ill. July 1, 2009) (*citing* Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Prison officials are not subject to constitutional liability for every injury suffered–only serious harms are protected. Farmer, 511 U.S. at 834. *See* Murrell v. Bukowski, No. 08-2044, 2011 WL 884736, (C.D. Ill. March 11, 2011) (finding that "busted lip" did not constitute a serious harm); Pinkston v. Madry, 440 F.3d 879, 891 (7th Cir. 2006) (holding that split lip and a swollen cheek do not rise to the level of an objectively serious medical need).

Deliberate indifference occurs when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Liability cannot be premised on the idea that a reasonable jail official would or should have know that the inmate was at risk. Id. (rejecting an objective test for deliberate indifference). The plaintiff must instead show that the defendant had

7

"something approaching total unconcern for [the plaintiff's] welfare in the face of serious risks," Duane v. Lane, 959 F. 2d 673, 677 (7th Cir. 1992) (*citing* McGill v. Duckworth, 944 F. 2d 344, 347 (7th Cir. 1991)), or a "conscious, culpable refusal to prevent harm." Id. (*citing* Duckworth v. Franzen, 780 F. 2d 645, 653 (7th Cir. 1985)). Furthermore, although deliberate indifference to an inmate's safety has been found when officials do nothing in response to an inmate's concern, Lewis v. Richards, 107 F. 3d 549, 553 (7th Cir. 1997), an official cannot be deliberately indifferent without knowing that the inmate was at risk of serious harm. Goka v. Babbitt, 862 F. 2d 646, 647-48 (7th Cir. 1988). It is the inmate's responsibility to inform jail officials of the specific risk of serious harm.

Plaintiff has also failed to show that JCDC officials acted with deliberate indifference to a serious risk of harm. Plaintiff was subjected to twice daily strip searches, without incident, for months prior to the June 23, 2009 altercation (Defs.' SOF ¶ 25). Because the prior searches were executed without incident, Plaintiff cannot "show that there was a substantial risk beforehand that serious harm might actually occur." Estate of Rice v. Correctional Medical Services, No. 06-CV-697, 2009 WL 1748059, at *13 (N.D. Ind. June 17, 2009). Even if the plaintiff's rights were violated during the June 23, 2009 altercation, it was merely an aberration from the routine searches conducted until that time. JCDC administration thus could not have acted with deliberate indifference in failing to protect Plaintiff. Furthermore, because the plaintiff did not complain or grieve that he was under a threat from JCDC officers, JCDC administration again could not have acted with deliberate indifference in failing to protect the plaintiff because the administration did not know of any alleged threat. Thus, summary judgment is granted in favor of all defendants on the plaintiff's failure to protect claim, except the defendants, Scott Brazille, Matthew Meehan, Robert Smith, Antonio Emery and Emerson Rushing, who have not moved for summary judgment on the excessive force claim. As the plaintiff alleged that each of the officers was involved in the alleged June 23, 2009-assault against him, he can proceed on his failure to protect and excessive force claims against these defendants.

First Amendment Claims

The plaintiff has alleged that his First Amendment rights were violated by his being denied a "visiting list" and stamps and envelopes by JCDC staff. Detained persons "retain their First Amendment right to correspond and communicate with their loved ones." Watson-El v. Wilson, No. 08 C 7036, 2010 WL 3732127, *12 (N.D. Ill. Sept. 15, 2010). Additionally, "[s]ome courts have found that prison visitation may also be protected by the First Amendment right of association." Dehmer v. Zuercher, No. 07-1218, 2010 WL 3433765, at *4 (C.D. Ill. Aug. 27, 2010) (*citing* Brisbon v. Lane, 554 F.Supp. 426, 428 (N.D. Ill. 1983); Morgan v. DeRobertis, 582 F.Supp. 271, 273 (N.D. Ill. 1984)). These rights, though, are not absolute. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The Supreme Court has determined that "freedom of association is among the rights least compatible with incarceration[, and s]ome curtailment of that freedom must be expected in the prison context." Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (citations omitted). These rights can be restricted by regulations that "bear a

8

rational relation to legitimate penological interests." Id. at 132 (*citing* Turner, 482 U.S. at 89). In analyzing those regulations, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id*.

At JCDC, visitation rights are restricted. In order to have visitors, inmates must complete an "Inmate Visitation Form," which requires the inmate to list the name of each person who may come to visit. Inmates can obtain a visitation form by request, either oral or written. Requiring an inmate to list potential visitors serves a legitimate penological interest; JCDC administration needs to know if a visitor is a potential security risk. *See* Carter v. O'Sullivan, 924 F.Supp. 903, 910 (C.D. Ill. 1996) (finding "no authority questioning the validity" of inmate visitation lists). Plaintiff filed his Amended Complaint with this Court on October 1, 2009. In it, he alleges, "Now since the date of Feb. 9th 2009, I've been denied . . . a visiting list which is required to receive visits at J.C.D.C. [sic] Per J.C.D.C. administrative staff for unknown reasons so I could not receive a visit from my family and friends at all." This allegation is directly contradicted by Plaintiff's own testimony. In Plaintiff's deposition, he admitted that he received a visitation form four to six months after his arrival at JCDC, which would be sometime between June and August, 2009. Plaintiff waited until September 20, 2009 to complete his visitation form, several days before his complaint was filed. Additionally, the plaintiff completed a second visitation form, adding more potential visitors to his list, on October 1, 2009, the same day he filed his Amended Complaint alleging he never received a list. The plaintiff never received any visitors while he was at JCDC.

To the extent that Plaintiff is alleging that there was a delay in receiving a visitation form, the undisputed facts still do not support a constitutional claim. The plaintiff never properly grieved the matter. The JCDC grievance procedure states that grievances containing "collective
protest(s), complaint(s), or petition(s) will not be considered or responded to." On April 23, 2009, the plaintiff submitted a grievance asking about his access to visitation and mail. Because this grievance contained multiple complaints, it was denied. Again, on June 27, 2009, the plaintiff submitted a faulty grievance which listed multiple complaints. Despite the plaintiff's failure to properly grieve the matter, he received a visitation form between June and August 2009, that he did not complete until September 20, 2009, and he never received visitors while detained at JCDC. Therefore, it was the plaintiff's own failure to follow the JCDC grievance procedure that caused the plaintiff's delay in receiving the visitation list.

The plaintiff has also alleged that his First Amendment rights were violated by his being denied stamps and envelopes. Plaintiff was not allowed commissary access, including stamps and envelopes, for the purposes of officer safety. According to JCDC regulations, an inmate in administrative segregation, which the plaintiff was in, can be denied access to the commissary for "compelling reasons." Chief Downey knew of the plaintiff's history of severe behavioral problems, including shank-making and fighting, stemming from the plaintiff's time at the Cook County Department of Corrections. Chief Downey believed that, based on the plaintiff's history,

he thus had compelling reasons to deny the plaintiff commissary access. Furthering jail safety prerogatives by limiting access to the commissary for an inmate with a severe behavioral history is clearly a legitimate penological interest under Turner. Additionally, this commissary policy was neutrally applied, and the defendants did not use the policy to affirmatively restrict Plaintiff's associational rights. *See* Watson-El, 2010 WL 3732127 at *12 (finding no violation of associational rights when prison's neutral policy of placing encumbrance on money in prisoner's commissary account merely had the "indirect consequence" of limiting prisoner's ability to speak to his family via telephone). Further, the plaintiff's claim regarding his alleged denial of stamps and envelopes, like his claim of the denial of a visitation list, is also contradicted by the evidence. In his October 1, 2009 Amended Complaint, the plaintiff states: "Also since the date of Feb. 9th 2009 I've been unable to correspond with Family [sic] and friends because I am being denied stamped envelopes and paper to write a letter to my family by administrative staff & officers here at J.C.D.C. . . . I grieved this matter and still am denied by administration (Per chief Downey and asst. Chief Chad)." In the plaintiff's deposition, he admitted that he received stamps and envelopes four to six months after his arrival at JCDC, at the same time as when he received his visitation form. Because restrictions the plaintiff faced were rationally related to legitimate penological interests and because the plaintiff did receive both a visitation form and stamps and envelopes, summary judgment is granted in favor of the deefendants on the plaintiff's First Amendment claims.

Emotional Injuries

As the plaintiff has not suffered any physical injuries, the defendants are granted summary judgment on the plaintiff's claims for mental or emotional injuries as to the searches. The Prison Litigation Reform Act provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) When atheplaintiff was asked about his physical injuries in his Interrogatories, he responded "N/A," and he testified in his deposition that he did not have any physical injuries. Plaintiff also testified that his damages are the result of "just stress, mental, and post traumatic stress." Because the plaintiff has not suffered any physical injuries, his claims for mental or emotional suffering are be barred. *See* Robinson v. Page, 170 F.3d 747 (7th Cir. 1999).

It is ordered:

1. Pursuant to Fed. R. Civ. P. 56., the defendants' partial motion for summary judgment is granted [52]. The defendants' motion is granted as to the plaintiff's claim regarding the body searches, First Amendment claims and the plaintiff's claim for mental and emotional injuries as they relate to the searches and the First Amendment claims. The defendants, Michael Downey, Chad Kolitwenzew, Todd Schloendorf, Kent Smith, John Timm, Richard Ball, Adam Graves, Eric Senesac, Jeremy Most, John Juergens, Joshua Berns, Nicholas Riley, Kyle Vance, Tyson Nolan, Adam Jackson, Harry O'Neil, Charles Hertz, Miguel Ayala and Lazarus Hughes are granted summary judgment as to the plaintiff's failure to protect claim. The Clerk of the Court is directed to terminate

Michael Downey, Chad Kolitwenzew, Todd Schloendorf, Kent Smith, John Timm, Richard Ball, Adam Graves, Eric Senesac, Jeremy Most, John Juergens, Joshua Berns, Nicholas Riley, Kyle Vance, Tyson Nolan, Adam Jackson, Harry O'Neil, Charles Hertz, Miguel Ayala and Lazarus Hughes as defendants, and to enter judgment in their favor <u>at the close of this case</u>. The plaintiff may proceed on his failure to protect and excessive force claims against Scott Brazille, Matthew Meehan, Robert Smith, Antonio Emery and Emerson Rushing.
2. If the plaintiff wishes to appeal this order, he must file a notice of appeal with this court <u>within 30 days of the entry of judgment</u>. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should set forth the issues the plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).
3. A status conference is scheduled for 1:30 p.m., on Tuesday, January 10, 2012, The plaintiff shall appear, via video and the defendants may appear, via telephone. The Clerk of the Court is directed to issue a writ for the plaintiff's appearance at the status conference.

Enter this 16th day of December 2011.

**\s\Harold A. Baker**
_____
Harold A. Baker
United States District Court